(No. 11230.—Judgment reversed.)

MYRON .A. MARTIN, Admr., Plaintiff in Error, *vs.* SAMUEL A. COE *et al.* Defendants in Error.

*Opinion filed October 23, 1917.*

CONTRACTS—*when assignment of personal property will be set aside.* A decree setting aside an assignment of personal property for want of mental capacity will be sustained where it is clear from the evidence that the assignor was not mentally competent to transact any business at the time the assignment was made.

WRIT OF ERROR to the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

CHARLES H. ALDRICH, for plaintiff in error.

HENRY J. & CHARLES AARON, (DOUGLAS C. GREGG, of counsel,) for defendants in error C. T. and S. A. Coe.

PARK PHIPPS, for defendant in error George A. Long.

Mr. JUSTICE COOKE delivered the opinion of the court:

Alice Long died intestate June 27, 1914, leaving her husband, George A. Long, surviving her but leaving no children or descendants. Myron A. Martin, who was appointed administrator of her estate on the petition of George A. Long, applied to the probate court of Cook county for a citation against Samuel A. Coe and Clarence T. Coe, brothers of Alice Long, charging them with having in their possession assets belonging to the estate. Upon the hearing in the probate court it developed that the respondents claimed title to the property in question under a written instrument executed by Alice Long, and the court entered an order directing the administrator to file a bill in chancery to set aside this instrument. The bill herein was thereupon filed in the circuit court of Cook county by the administrator against Samuel A. Coe and Clarence T. Coe and their children, George A. Long, the Englewood State Bank and Mrs. R. V. Bane, asking to have the instrument set aside. One of the grounds relied upon was that Alice Long was mentally incapable of transacting any business at the time the instrument was executed. George A. Long answered admitting the allegations of the bill, and filed a cross-bill asking the same relief and claiming that of the money in controversy $2200 was his separate property. The other defendants answered, denying the averments of both the bill and the cross-bill. The cause was heard by the chancellor and a decree entered finding that Alice Long was mentally incompetent at the time she executed the instrument and setting the same aside, and finding, also, that $2200 of the money involved was the separate property of George A. Long. Samuel A. Coe and Clarence T. Coe appealed to the Appellate Court for the First District, where the decree was reversed and the cause remanded to the circuit court, with directions to dismiss the

bill of the administrator and to grant George A. Long on his cross-bill the same relief granted by the chancellor. The record has been brought to this court for further review by writ of *certiorari.*

Various witnesses called by the respective parties expressed opinions concerning the mental condition and competency of Alice Long to execute the instrument in question.

The facts produced are practically undisputed and are as follows: George A. Long was totally blind and for some time had been paralyzed in both legs but was able to walk with the aid of crutches. Alice Long had been afflicted with cancer of the breast and had submitted to a surgical operation in December, 1912. The operation was not successful, the malady recurred, and at the time the instrument in question was executed, on June 9, 1914, she was in a very critical condition. The Longs had a safety deposit box rented in their joint names, in which they kept notes, cash and some jewelry. Each of them had a key to this box. They also had money on deposit in the Englewood State Bank in the name of George A. and Alice Long, and checks against this account were honored by the bank when executed by either of them. With the exception of $2200, all of the money and securities which they possessed at the time of the execution of this instrument and at the death of Alice Long had been inherited by her from her father and a deceased sister. Some time prior to June 9, 1914, Mrs. Long had suffered a cross-paralysis, by which her left side and leg and right side of her face were paralyzed. As a result of this her speech was seriously impaired. Mrs. R. V. Bane was a friend and neighbor in whom Mrs. Long apparently had great confidence, and she gave her an order to be admitted to the safety deposit box. On May 20, 1914, Mrs. Bane made an inventory of the contents of the box, which she found to consist of $1300 in currency, several notes of Samuel A. Coe and Clarence T. Coe and others, and some jewelry. On June 9, 1914, Mrs.

Bane removed the currency and deposited it in the account of George A. and Alice Long in the Englewood State Bank, making a balance at that time of $3768.40. On the same day, which was eighteen days before the death of Mrs. Long and when there was no hope of her recovery, Clarence T. Coe went to her home, where he remained for a few minutes, and then he and Mrs. Bane went to the Englewood State Bank and removed from the safety deposit box all of its contents. Coe took possession of the jewelry, and the notes and securities were taken by Mrs. Bane. While at the bank Coe prepared in pencil the following memorandum:

"CHICAGO, *June 9, 1914.*
*"To whom it may concern:*
"This is to certify that I have this day given, of my own free will and voluntary act, to my brothers, Samuel A. Coe and Clarence T. Coe, all of my personal property, such as money, mortgages and notes, provided the same to be used as follows: The income from same and as much of the principal as may become necessary to be used for the support of myself and my husband, George Long, so long as either of us may live, the balance, if any, to belong to my brothers, as named above, for their own use."

Coe caused this memorandum to be typewritten, and with Mrs. Bane returned to the home of Mrs. Long. On the way there he called on plaintiff in error, Myron A. Martin, who is a physician and who had treated Mrs. Long, and requested him to go with them and witness a paper to be executed. They found Mrs. Long lying on a lounge. She was helpless and had to be carried about, was quite emaciated and exhausted and was indifferent to the exposure of her person. A physician who had seen her on May 22, 1914, had found her feeble, suffering from toxemia, in a wandering state of mind and physically greatly exhausted. When Coe, Mrs. Bane and Dr. Martin came in, George A. Long, who had been sitting on the back porch, was requested to come into the room. Coe read the paper he had prepared to Mrs. Long in the presence of her husband and the others present. She was then propped up on the couch and was about to sign it when George A. Long interrupted

and asked her if she had not always said she did not want any of her money to go to her brothers. He became greatly excited and objected to the execution of the instrument, and asked her if she had not given him a promise to give the money to the children of her brothers, and she replied that was what she wanted and what she meant to do. Long was quite angry and ordered Coe out of the house, and stated that if he could see he would get a gun and shoot him, and if he was a well man he would put him out. Coe remarked to Mrs. Long that if the property went to his brother and himself it would go to the children eventually. She said she did not want it to go to them but to the children; that he had three children and his brother had eight, and she wanted it to go to them equally. Coe said that would necessitate the making of a new instrument, but Dr. Martin suggested the interlineation of the word "children" after the word "brothers" near the end of the paper. This change was made, so that the concluding part of the instrument then read, "the balance, if any, to belong to my brothers' children as named above, for their own use." Mrs. Long was able to make herself understood only with great difficulty, but she said that was the way she wanted it, and with the assistance of her brother, who held the pen with her and who called out one letter of her name after another, saying, "Now, Alice, make an A," and so on through the name, she signed the instrument. She then gave certain articles of jewelry to her friends. After the instrument had been thus signed Coe drew a check to his order on the Englewood State Bank for the balance of $3768.40 on deposit there, and the check was signed by Coe and Mrs. Bane. The next day he deposited this check to his own account in the bank, and the fund stood in his name until July 6, 1914, when it was changed to Clarence T. Coe and Samuel A. Coe. Clarence T. Coe also took possession of the property taken from the safety deposit box.

From a consideration of all the evidence and the facts proven and not disputed we are clearly of the opinion that Alice Long was not capable of transacting any business when this instrument was signed. From the undisputed facts proven it is evident that there was a degeneration of her mental powers. When the instrument was first read to her Mrs. Long was about to sign it as it was written, although it made a disposition of her property which was contrary to all her previously expressed intentions. Disinterested witnesses testified that she had repeatedly stated that she did not intend any of her property to go to her brothers but that she intended to leave it to their children. Had it not been for the objections made by her husband the instrument would have been executed as it was drawn. It could hardly be said that one in such a mental condition was capable of transacting ordinary business. The failure of George A. Long to protest against the execution of the instrument after it had been changed to correspond with the intentions previously declared by his wife does not indicate that he did not consider his wife lacking in mental capacity to execute the instrument. He became very angry and declared it to be an outrage for Coe to come there and attempt to have his wife transact business when she was in that condition. Blind and afflicted as he was, he did everything in his power to prevent this imposition upon his dying wife. While there was very little contradiction as to the facts, the chancellor saw the witnesses and heard them testify, and we see no reason to disagree with his conclusions.

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.

*Judgment reversed.*